ANDERSON FOWLER, Appellan , *v.* HENRIETTA BUTTERLY, Respondent.

B. procured a policy of insurance upon his life "until the 6th day of September, 1882, or until his decease in case of his death before that time ;" in the latter event the amount insured was, by the terms of the policy, to be paid to the wife of B. if living, otherwise to his daughter. The policy was delivered to the wife, and placed where both she and her husband could have access to it. Subsequently B., as the court found, "through undue influence and control, amounting to compulsion," procured his wife to execute an assignment of the policy to McC. ; she signing the assignment "without any knowledge of its purpose or purport, without consideration, and without any intention on her part to divest herself of any property or right, or of any interest in said assurance." This, with the policy and an assignment executed by himself, B. delivered to McC. McC. and plaintiff, his assignee, subsequently paid the premiums. B. died in 1875. In an action upon the policy, wherein the wife of B. was brought in by order of interpleader, *held,* that, upon delivery of the policy, the wife of B. acquired a direct interest therein, which, independent of the statutes relating to insurance upon the life of a husband for the benefit of his wife, could only be transferred by an assignment duly executed; that said interest was unaffected by the instrument so executed by the wife, and that she was entitled to the amount of the insurance.

(Argued June 5, 1879 ; decided September 16, 1879.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury.

This action was originally brought by plaintiff against the North American Life Insurance Company, upon a policy

issued by it on the life of Nicholas Butterly. By order of the court, and upon payment of the amount of the policy into court, the present defendant, the widow of the assured, who claimed to be entitled to the fund, was substituted as defendant. By the terms of the policy said company assured the life of said Butterly "in the amount of $5,000, until the 6th day of September, in the year 1882, or until his decease in case of his death before that time, and the said company do hereby promise and agree to and with the said assured, well and truly to pay or cause to be paid, the said sum insured to the said insured, within ninety days after the termination of this assurance as aforesaid, or in case he shall die before that time, then to Henrietta Butterly, wife, if living, otherwise to Alice V. Butterly, daughter of the said assured." Butterly paid the premiums to October 13, 1872, and on that day executed and delivered an assignment of the policy to one McCormack. On the same date the following paper was delivered by Butterly to McCormack:

"In consideration of the sum of one dollar, to us in hand paid by Joseph E. McCormack, the receipt whereof is hereby acknowledged, we, Henrietta (wife) and Alice V. Butterly (daughter), do hereby sell, assign, transfer and set over unto the said Joseph E. McCormack all our right, title and interest in the policy of insurance on the life of Nicholas Butterly issued by the North American Life Insurance Company, and numbered 11,994.

"Dated New York, *October* 13, 1872.

"HENRIETTA BUTTERLY,
"ALICE V. BUTTERLY."

Thereafter the premiums were paid by McCormack, until he assigned the policy to the plaintiff, and then the premiums was paid by plaintiff, or on his account, by McCormack.

As to the instrument signed by the defendant, Mrs. Butterly, the court found, as matter of fact, that "it was signed by her without any knowledge of its purpose or purport, without any consideration passed to her for so doing, and

without any intention on her part to divest herself of any property or right, or of any interest, in said assurance, and that her signature thereto was procured from her by the exercise, on the part of her husband, of undue influence and control, amounting to compulsion ; " and, as a conclusion of law on these facts, that the instrument was inoperative and void, as an assignment of the wife's interest in the policy. Butterly died in 1875.

*C. Van Santvoord,* for appellant. The presumption of law is that a party to a writing reads it, or was otherwise informed of its contents, or willing to assent to its terms without reading it, when there is no evidence of fraud or imposition. (*Grace* v. *Adams,* 100 Mass., 507; *Chapman* v. *Rose,* 56 N. Y., 137–141; *Rexford* v. *Rexford,* 7 Lans., 6.) A wife has capacity to assign her interest in a policy of insurance in concurrence with her husband by writing, indicating her intention to do so. (*Yale* v. *Dederer,* 18 N. Y., 265; 22 id., 450–452; 2 Bishop on Married Women, §§ 479, 480; *Barry* v. *Eq. L. Ass. Co.,* 59 N. Y., 588; *Stillwell* v. *Mut. L. Ins. Co.,* 72 id., 388–391.) The covenant in the policy being with defendant's husband, as the assured, the legal title and interest was in him, and no suit could be brought at common law upon it, except in his name, or that of his executors or administrators. (1 Chitty's Pl., 3.) Any interest of defendant could have been defeated by her husband by a release or assignment for a valuable consideration. (*Draper* v. *Jackson,* 16 Mass., 476, 482, 486; 2 P. Wms., 497; *Sanford* v. *Sanford,* 45 N. Y., 723; *Schuyler* v. *Hoyle,* 5 J. Chy., 196; 2 Kent's Com., 137.) This right is not affected by the acts for the more effectual protection of the property of married women. (Laws 1848, chap. 200, § 3; Laws 1849, chap. 375; Laws 1860, chap. 90, §§ 1–8; Laws 1862, chap. 172; *Towl* v. *Towl,* 114 Mass., 167.) The assignment of the policy to McCormack for a valuable consideration, without reservation, was an effectual transfer thereof. (*Jones* v. *Gibbon,* 9 Ves., 411; 2 Kent, 137.)

*Henry W. Johnson,* for respondent.   The assignment of
the policy by defendant not being her free act and deed was
inoperative and void.   (1 Pars. on Con., 319; Story on
Con., § 393.)   Defendant was not estopped from pleading
that she did not consent to the contract.   (2 Bishop on Mar-
ried Women, §§ 484, 495; Tyler on Infancy and Coverture,
726.)   Defendant's interest in the policy was not assignable.
(*Eadie* v. *Slimmon,* 26 N. Y., 9; *Barry* v. *Eq. L. Ins. Co.,*
59 id., 587; *Barry* v. *Brune,* 8 Hun, 400; 71 N. Y., 261;
*Baker* v. *Un. Mut. Life,* 43 id., 287.)

MILLER, J.   The policy which constitutes the subject of
controversy in this action was issued to assure the life of
Nicholas Butterly, "until the sixth day of September in the
year 1882, or until his decease, in case of his death before
that time."   In the latter event before the time named, the
insurance company promised to pay the amount insured to
"Henrietta Butterly, his wife, if living, otherwise to Alice
V. Butterly, daughter of the assured."   It will be seen that
the policy was not alone for the benefit of the husband, but
contained two separate and independent provisions.   One
of these was for his benefit, and conferred upon him absolute
authority to receive the amount insured, if he remained alive
until the time named and the policy was then in force ; and
the other for the benefit of the wife, if she survived him, or
otherwise of the daughter.   In case of the death of the
assured, the wife or daughter became thereby vested with
the sole right to collect and receive the money mentioned
in the policy.   The payment of the premium was made and
the policy was obtained having these objects in view.   The
husband alone could collect the policy, if alive at the time
of its expiration ; otherwise it inured to the benefit of the
wife, in case she survived her husband, or of the daughter as
provided.   The fact that the covenant in the policy was with
Butterly, as the assured, and the legal title and interest was
in him, if he lived until the time named, does not establish
an intention to keep control of the policy, otherwise than as

specified, or deprive the wife of the right which she had by virtue of the same. Nor was there any such retention of possession, or failure to deliver the policy by the assured, as indicated a design on his part to assume the absolute owner-ship of the same. It was delivered to the wife and placed where both herself and her husband had access to it; and even if we may assume there was no actual delivery, this omission is not conclusive, for the reason that the language of the policy was such that the husband might properly retain it in his own possession and for his own benefit as long as he lived, prior to the time of its expiration in 1882. His possession was the possession of the wife; and the general rule that where there is a gift there must be an actual deliv-ery, therefore has no application. The policy itself shows the intention; and no argument is to be derived from a fail-ure to surrender that in which the husband had a present interest before the wife had any absolute right to receive the money. Nor is it a legitimate inference that the provision in the policy for payment to the wife, in case of the hus-band's death, was only for her benefit, in case he should not dispose of the policy. Such a construction would be at war with the obvious meaning and plain import of the policy, and is not, we think, supported by any of the authorities cited by the appellant's counsel to sustain this position.

It is, we think, well settled that where the husband takes a security, or obtains a policy of insurance, in which the sum named therein is payable to himself and his wife, and she survives him, that the action survives to her, and the form of the security implies a design by the husband to benefit the wife. See *Sanford* v. *Sanford* (45 N. Y., 726), and authorities there cited. In the case cited it was said that a delivery was not essential to perfect the gift.

The appellant's counsel claims that like other choses in action for a consideration running between husband and wife, for the benefit of the wife if she survives him, inde-pendent of the statutes relating to insurance of the life of the husband for the benefit of married women, the husband

could defeat the interest of the wife by a release or assignment. We think that this rule does not apply where a policy of insurance is taken out payable to the wife in case she survives the husband; for in such case there is not only an express contract to pay to the wife upon the contingency mentioned in the policy, but the cotemporaneous acts are usually of such a character as to indicate an intention to hold the same in trust for her benefit. Here it was, in fact, an executed trust, as the declaration of the husband to the company shows, for the benefit of the wife and himself, upon which the company promised to pay. The case at bar is not analogous to that of a bond or promissory note payable to the husband and wife jointly, where the same belongs to the husband, and the wife has no direct interest in it. She has an interest in the life of the husband which is insurable; and hence a promise to pay her is supported by a sufficient and valuable consideration.

The wife of Butterly having a direct interest in the policy in question, it could only be transferred, independent of the statutes relating to insurance upon lives for the benefit of married women, by an assignment duly executed by her. The judge upon the trial found that the instrument bearing date the 13th of October, 1872, executed by her, which purports to be an assignment of Mrs. Butterly's interest in the policy to McCormack, was executed without her knowledge of its purpose or import, and without any consideration and any intention on her part to divest herself of any interest she had in such assurance; and that her signature was procured by the exercise on the part of her husband of undue influence and control, amounting to compulsion. We think that the evidence was sufficient to sustain this finding. The testimony shows that Mrs. Butterly received no consideration for signing the paper, and she swears that if she did sign the instrument, it was done at the request of her husband, and because he asked her and she was afraid to refuse him. The proof also shows that she never read it, and that the subscribing witness to the assignment has a very imperfect

recollection of the transaction. Perhaps the evidence was not very strong, but I think it was sufficient to warrant the conclusion of the referee which we have considered, and his finding should be upheld.

If the positions taken are correct, then the interest of Mrs. Butterly was unaffected by the assignment, and it is not necessary to consider whether the policy was within the spirit and objects of the legislation of this State relating to insurance of the husband's life for the benefit of the wife, and for that reason was not assignable.

The other questions raised have received due consideration, but none of them present any valid ground for a reversal of the judgment, and it should be affirmed.

All concur, except ANDREWS, J., absent.

Judgment affirmed.